THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTOINE MASON, Defendant-Appellant.

First District (2nd Division) No. 1—99—2805

Opinion filed December 26, 2000.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret J. Campos, and Jazmin I. De Olazabal, Assistant State's Attorneys, of counsel), for the People.

. PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant was found guilty of first degree murder and attempted first degree murder after a bench trial. He was sentenced to consecutive terms of 60 and 25 years. Defendant challenges his first degree murder conviction and claims his consecutive sentence is unconstitutional. We affirm in part and vacate in part.

The evidence at trial revealed the following. William Thurman drove Eric Martin and two other friends to a liquor store near 54th Street and Damen Avenue in Chicago at about 9 p.m. on July 31, 1994. Thurman parked his car on the east side of Damen Avenue, next to a brown pickup truck. The brown truck was parked on a parkway in front of a liquor store near a pay phone on the sidewalk. Thurman's car was a maroon Oldsmobile. The brown truck was between the store and the maroon car.

Thurman stayed in the car while his three friends went inside the store. Thurman testified that he entered the store briefly to check on his friends and saw they were in the checkout line. He then returned to his car. Two of Thurman's friends left the store and got in the backseat of the car. Thurman said that, while they were waiting for Martin, defendant and another man came up to the front passenger window and started an argument. Thurman said defendant asked him if he was "Big Thief." Thurman said his nickname was "Big Will." Thurman said that defendant then asked his companion for "the piece" and shot at Thurman three to four times, wounding him in the thigh. Thurman and his friends left the car and ran across the street.

Martin testified that, as he left the store, he was attacked by four or five members of the Vice Lords gang who had been standing in front of the store. Martin said he managed to get away and was chased down 55th Street. He heard five to six gunshots about 15 minutes

later, when he got home. Martin identified Kenyatta Cursey, a Vice Lord gang member and a State witness, as one of the men outside the store.

Johnny Harris testified that he brought his six-year-old son and two-year-old grandson to the liquor store at 54th Street and Damen Avenue. Harris parked his truck on the sidewalk in front of the store. When he left the store, Harris noticed that a maroon car had parked on the curb alongside his truck. Harris said he was helping the children into the truck when he heard an argument beside a maroon car parked behind his truck. Harris said he heard a man say "give it to me, I'm going to off this mark." Harris then saw the man get a gun and shoot at a man in the maroon car. Harris said that, a second later, another man near the telephone booth fired three shots at the maroon car. One of the shots fired by the man near the telephone booth hit Harris's six-year-old son in the head, killing him. Harris saw Brandon Johnson run down an alley next to the store. He later identified defendant as the man who shot into the maroon car. He also identified Johnson as the shooter near the telephone booth.

Ronnie Smith testified that he was a member of the Vice Lords gang. Smith was originally arrested for the July 31 shooting, but was never charged. Smith said that he was walking down Damen Avenue, toward the liquor store, when he saw a fellow gang member, known as "Mad Dog," chasing someone down the street. He then saw defendant and Brandon Johnson jogging next to each other out of an alley next to the store. Smith saw defendant go to the maroon car. Johnson went to the front of the store. Defendant shot at the driver of the car. Johnson fired five to six shots at the car from the phone booth. Smith said he saw Johnson and defendant run together down an alley next to the store.

On cross-examination, defense counsel established that, at codefendant Johnson's earlier trial, Smith testified that he did not see defendant or Johnson leave the scene of the shooting. Smith said he did not remember that testimony. Smith also admitted lying to police during their investigation. Smith admitted that he first told the police that he was not at the liquor store on July 31 and only knew what had happened because someone had told him.

Kenyatta Cursey testified for the State. His testimony was consistent with a statement he had given to police and testimony before a grand jury on August 3, 1994. Cursey said he was a member of the Black Stones gang and that he believed the Vice Lords and Black Stones were at war. Cursey was in front of the liquor store on July 31. Cursey testified he saw defendant standing by a maroon car parked near the store. He heard defendant say "[expletive deleted]

Chief Stones" and then shoot into the car. Defendant ran toward Winchester Avenue. Cursey said Johnson fired shots at the car as he ran past the car to an alley next to the store near 55th Street. Cursey said he ran toward Winchester.

Defendant testified that he went to the liquor store near 54th Street and Damen Avenue on July 31, 1994. He was at the entrance of an alley near the store when he saw Thurman staring at him from his car. Defendant went up to the car and asked Thurman why he was staring at him. Defendant said that Thurman was "acting crazy." Defendant said he heard gunshots from behind and reached for a friend's gun. Defendant said he thought Thurman was reaching for a gun. He shot at Thurman to protect himself. Defendant then ran down the alley and disposed of the gun. Defendant denied going to the liquor store with Johnson. He also denied knowing Johnson was at the liquor store on the night of the shooting.

Defendant knew police were looking for him so he actively avoided them. Defendant admitted being a member of the Vice Lords gang. Defendant said that his testimony at trial was the same as the statements he gave police when he was arrested.

Detective James O'Brien testified in rebuttal. O'Brien said that, when first interviewed, defendant denied being involved in the shooting. Defendant admitted his involvement only when he was told he had been identified as the shooter. Defendant told O'Brien that he was at the liquor store with other gang members. He asked the driver of a maroon car if he was a "Chief Stone." He then shot the driver. Defendant told O'Brien he heard more shots as he ran away from the scene. He left the neighborhood when he heard police were looking for him. He remained in hiding until his arrest.

Defendant was found guilty of first degree murder based on accountability and attempted first degree murder. He was sentenced to consecutive terms of 60 and 25 years.

Defendant raises two issues on appeal: (1) defense counsel's failure to perfect Smith's impeachment and use evidence of an earlier inconsistent statement as substantive evidence amounts to ineffective assistance of counsel; and (2) the mandatory consecutive sentence provision is unconstitutional under the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

■ To prevail on an ineffective assistance of counsel claim, a defendant must prove that his attorney's representation fell below an objective standard of reasonableness and that, but for the unprofessional errors, there is a reasonable probability that the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 80 L.

Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ We are asked here to determine whether defense counsel's failure to submit the transcript of Smith's earlier trial testimony as substantive evidence as allowed under section 115—10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1 (West 1996)) (the Code) amounts to ineffective assistance of counsel. We believe it does not.

We first note that a transcript of Smith's earlier trial testimony was not made a part of the record on appeal. Only those parts of Smith's earlier testimony quoted by counsel at trial here are before us on appeal. We question our ability to review this issue absent the complete transcript. *Cf. People v. Olinger*, 176 Ill. 2d 326, 680 N.E.2d 321 (1997) (ineffective assistance claim relating to improper impeachment reviewed where inconsistent statements were not made part of record on appeal). Lack of a complete transcript aside, defendant's ineffective assistance argument is unpersuasive.

Defendant contends that his counsel was ineffective by failing to impeach Smith and use Smith's earlier testimony as substantive evidence under section 115—10.1 of the Code. 725 ILCS 5/115—10.1 (West 1996). But our review of the record shows that Smith was impeached, and section 115—10.1 does not *require* a prior inconsistent statement to be used as substantive evidence.

The following exchange took place during Smith's cross-examination:

"COUNSEL: You testified in [the earlier] trial didn't you?

SMITH: Yes, sir.

COUNSEL: Page 48. Were you asked this question and did you give these answers: 'Mr. Smith, after [Johnson] fired his gun for the last time did you see where he went? Answer: No sir.' Were you asked that question, did you give that answer?

SMITH: I don't know at the time.

COUNSEL: I can't hear you.

SMITH: I don't know. It's been so long sir.

COUNSEL: Are you saying you didn't give that answer or you don't know?

SMITH: I don't remember.

COUNSEL: All right. 'Question: Did you see where [defendant] went? Answer: No sir.' Were you asked that question and did you give that answer?

SMITH: Can't remember sir.

COUNSEL: You can't remember?

SMITH: (no audible response.)

COUNSEL: Well if you gave those answers, would those answers be a lie or would they be the truth.

PROSECUTOR: Objection.

THE COURT: Sustained."

The purpose of impeachment is to destroy credibility. *People v. Cruz*, 162 Ill. 2d 314, 359, 643 N.E.2d 636 (1994). Smith was confronted with his earlier trial testimony in which he said that he did not see where defendant or Johnson went after the shooting. Smith claimed not to remember that testimony. The inconsistency was established for the trier of fact. Defendant cites no case law to suggest that more was needed to impeach Smith. The cases he does cite are inapposite.

In *People v. Salgado*, 263 Ill. App. 3d 238, 635 N.E.2d 1367 (1994), *People v. Skinner*, 220 Ill. App. 3d 479, 581 N.E.2d 252 (1991), and *People v. Garza*, 180 Ill. App. 3d 263, 535 N.E.2d 968 (1989), defense counsel either failed to call a witness (*Skinner*, 220 Ill. App. 3d at 483-84) or failed to confront the witness with his earlier inconsistent statement (*Salgado*, 263 Ill. App. 3d at 247; *Garza*, 180 Ill. App. 3d at 269).

We also decline to hold that counsel's failure to use Smith's earlier inconsistent testimony as substantive evidence amounts to ineffective assistance of counsel. We note that defendant cites no case law to the contrary. How a witness is cross-examined is an exercise of professional judgment which is entitled to substantial deference on review. *People v. Pecoraro*, 175 Ill. 2d 294, 326-27, 677 N.E.2d 875 (1997). We do not believe counsel's choice not to make substantive use of Smith's inconsistent statement was objectively unreasonable where defendant was tried in a bench trial and no possibility of jury confusion existed. We conclude that counsel's performance here did not fall below the standard of objective reasonableness required under *Strickland*. There was no ineffective assistance of counsel.

▮▮ Defendant next argues that his consecutive sentence under section 5—8—4 of the Unified Code of Corrections (730 ILCS 5/5—8—4 (West 1996)) is unconstitutional under the Supreme Court's recent pronouncement in *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. The *Apprendi* Court held that, except for the fact of an earlier conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. We note that defendant raises this issue for the first time in a supplemental brief. Defendant did not file a postsentencing motion in the trial court. Lack of a postsentencing motion generally waives review of sentencing issues on appeal. See *People v. Reed*, 177 Ill. 2d 389, 686 N.E.2d 584

(1997). But challenges to a court's statutory authority to impose a particular sentence are not waived. *People v. Wilson*, 181 Ill. 2d 409, 413, 692 N.E.2d 1107 (1998); *People v. Clifton*, 321 Ill. App. 3d 707, 725 (2000).

■ Section 5—8—4(a) permits consecutive sentences for offenses committed as part of a single course of conduct if one of the offenses is first degree murder or a Class X or Class 1 felony and involved the infliction of severe bodily harm. 730 ILCS 5/5—8—4(a) (West 1996). Section 5—8—4(b) permits a consecutive sentence if the court determines that "such a term is required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5—8—4(b) (West 1996). The record here shows that the court made findings under both subsections (a) and (b):

"I believe that [a consecutive sentence] is the appropriate sentence ***. It is appropriate because of the injuries involved, because it is also necessary that this defendant's actions be deterred, that he not be allowed to continue his crime wave."

We considered the effect of *Apprendi* on section 5—8—4 in *Clifton*. There we reasoned that the *Apprendi* holding applied to section 5—8—4 because, although section 5—8—4(a) "does not enhance the sentence for any particular crime, it does extend the range of sentence to which a defendant may be exposed for a given course of conduct." *Clifton*, 321 Ill. App. 3d at 726. The practical effect of a section 5—8—4(a) finding increases, and may double, "the actual and potential sentence that the defendant may receive for a given course of conduct." *Clifton*, 321 Ill. App. 3d at 726. We concluded that this was precisely the type of result *Apprendi* was designed to prevent. *Clifton*, 321 Ill. App. 3d at 726. We then held that consecutive sentences for crimes arising out of the same course of conduct based on a court finding that the defendant inflicted severe bodily harm were unconstitutional under *Apprendi. Clifton*, 321 Ill. App. 3d at 727.

We affirm defendant's conviction but vacate the order requiring his sentences to run consecutively. We order the trial court to correct the mittimus to provide that the sentences are to run concurrently.

Affirmed in part and vacated in part.

COUSINS and McBRIDE, JJ., concur.