NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230222-U

NO. 4-23-0222

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| EARL HAYNES, | ) | No. 99CF442 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*: The motion of the Office of the State Appellate Defender to withdraw as
defendant's appellate counsel is granted, and the trial court's denial of defendant's
motion for leave to file a successive postconviction petition is affirmed.

¶ 2   Defendant, Earl Haynes, appeals the trial court's denial of his motion for leave to

file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

(West 2022)). On appeal, the Office of the State Appellate Defender (OSAD) was appointed to

represent him. OSAD has filed a motion to withdraw as appellate counsel, alleging an appeal

would be frivolous. Defendant has not filed a response to OSAD's motion. For the following

reasons, we grant OSAD's motion and affirm the court's judgment.

¶ 3                    I. BACKGROUND

¶ 4                 A. Conviction and Direct Appeal

¶ 5   Defendant was convicted of first degree murder (720 ILCS 5/9-1(a) (West 1998)).

The conviction stemmed from the May 1999, shooting death of Claude Blackburn; defendant fired the gun that killed Blackburn. Defendant was born on July 26, 1977, and thus was 21 years old at the time he shot Blackburn. Defendant requested a sentence "at or near" the minimum applicable sentence of 20 years' imprisonment, while the State requested a sentence of 55 years. On March 10, 2000, the trial court sentenced him to 40 years' imprisonment and 3 years' mandatory supervised release (MSR).

¶ 6        Defendant appealed, and we affirmed his conviction and sentence. *People v. Haynes*, No. 4-00-0284 (2002) (unpublished order pursuant to Illinois Supreme Court Rule 23). Defendant argued, *inter alia*, "[T]he trial court did not give adequate consideration to [his] age (22) [*sic*], his intoxicated state at the time of the offense, or that [he] did not intend to kill Blackburn." *Id.* at 19. We disagreed, finding, "The record shows the trial court considered the proper factors in determining defendant's sentence. The court noted defendant's young age and the fact drugs and alcohol were involved as mitigating factors. *** The court rejected the State's recommended sentence of 55 years because the murder was not premeditated." *Id.* at 20.

¶ 7                        B. The Original Postconviction Petition

¶ 8        Defendant filed a petition under the Act on February 27, 2003. In his *pro se* amendments to this petition, dated April 11, 2003, he alleged, *inter alia*, his sentence was unfair as shown by his codefendant's sentence. The amended petition filed in November 2003 by defendant's appointed postconviction counsel adopted defendant's claims but did not add any further sentencing claims. The trial court dismissed the petition on the State's motion. Defendant appealed, and appointed counsel moved to withdraw pursuant to the procedure set out in *Pennsylvania v. Finley*, 481 U.S. 551 (1987). We granted counsel's motion and affirmed the dismissal. *People v. Haynes*, No. 4-05-0583 (2008) (unpublished order pursuant to Illinois

Supreme Court Rule 23).

¶ 9                              C. The Motion to File a Successive Petition

¶ 10            On December 7, 2022, defendant filed a motion for leave to file a successive postconviction petition. (The motion is stamped "Dec. 7 2023," an obvious error.) He contended the proportionate penalties clause of Illinois's constitution (Ill. Const. 1970, art. I, § 11) required the trial court to give more consideration at sentencing to his youth at the time he shot Blackburn and his long-standing problems with substance abuse.

¶ 11            Defendant asserted he had "cause" under section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2022)) to file a successive petition based two documents: (1) an August 2017 written declaration made by Erin David Bigler, Ph. D., to a California trial court and (2) an August 2017 order in a Kentucky trial court ruling Kentucky's death penalty statute was unconstitutional to the extent it permits the execution of offenders less than 21 years old on the date of the offense. Both documents summarize research tending to show adolescent brain characteristics, notably those relating to self-regulation, persist into individuals' early twenties. According to Bigler's summary, until the 1990s, the consensus had been brain development ceased in the late teenage years. That consensus came under challenge in the late 1990s and 2000s. Research since then made it increasingly accepted adults into their mid-twenties retain "legally[ ]relevant" adolescent developmental characteristics. The Kentucky order contained a similar summary, stating, because the United States Supreme Court relied on "scientific studies" when, in *Roper v. Simmons*, 543 U.S. 551, 568 (2005), it held the death penalty for offenders under the age of 18 violates the eighth amendment (U.S. Const., amend. XIII), it would also rely on such studies.

¶ 12            Defendant asserted he could show "prejudice" under section 122-1(f) (725 ILCS 5/122-1(f) (West 2022)) in that, since the Supreme Court decided *Miller v. Alabama*, 567 U.S. 460

(2012), Illinois courts have become increasingly receptive to scientific evidence adults in their early twenties are still developing mentally. He suggested the facts of his case showed he was displaying exactly the kind of impulsivity characteristic of someone whose brain development was incomplete. He also implied scientific evidence would support a claim his substance abuse problems had slowed his maturation.

¶ 13　　　　Defendant further contended his sentence was a *de facto* life sentence under the rule in *People v. Buffer*, 2019 IL 122327, ¶ 41, 137 N.E.3d 763. *Buffer* held, "[A] prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Id.* Defendant implied, for purposes of applying the rule in *Buffer*, one should consider the three years of MSR included in his sentence as part of his prison sentence, thus making his total sentence of 43 years a *de facto* life sentence.

¶ 14　　　　The trial court denied defendant's motion on January 27, 2023, notably finding (1) the court considered defendant's youth and substance abuse problems during his sentencing hearing before imposing a discretionary sentence and (2) defendant did not receive a *de facto* life sentence. It ruled defendant could not establish the "cause and prejudice" necessary to support the filing of a successive petition.

¶ 15　　　　This appeal followed.

¶ 16　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　OSAD seeks to withdraw as counsel on appeal, asserting it can make no meritorious argument (1) any procedural irregularities occurred in the trial court's denial of the motion for leave to file a successive postconviction petition or (2) the court erred when it ruled defendant could not establish cause and prejudice. We agree on both points.

¶ 18　　　　　　　　　　A. Procedural Irregularities

¶ 19 OSAD notes, under *People v. Bailey*, 2017 IL 121450, ¶ 16, 102 N.E.3d 114, the State has no role in addressing the merits of a defendant's motion for leave to file a successive petition, either by filing a response or by otherwise "provid[ing] input" to the trial court. However, it also correctly notes the record does not suggest the State had any involvement in the court's ruling on the motion. Thus, any argument based on the rule in *Bailey* would be frivolous.

¶ 20 Further, as OSAD points out, the Act does not specify how long the trial court has to decide a motion to file a successive postconviction petition. It suggests any claim of procedural error based on the interval between the motion's filing would therefore lack any possible merit. We agree. Moreover, the court addressed the motion in less than two months, which is not an inordinately long time.

¶ 21 B. The Legal Standard for a Successive Postconviction Petition

¶ 22 We now address why any argument OSAD could make the trial court erred in denying defendant's motion would be frivolous. We focus primarily on why it would be frivolous to argue defendant showed "cause" under section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2022)).

¶ 23 Section 122-1(f) limits defendants to the filing of a single postconviction petition unless they demonstrate "cause" and "prejudice." To be sure, Illinois law recognizes exceptions to this standard, the most notable of which applies when a defendant "make[s] a persuasive showing of actual innocence." *People v. Wilson*, 2023 IL 127666, ¶ 23, 220 N.E.3d 1068. But defendant's claim does not fall into any recognized exception. When a defendant seeks leave to file a successive petition with claims not falling into an exception:

> "Leave of court [to file the petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial

post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2022).

A defendant shows "cause" by "identifying an objective factor that impeded the ability to raise a specific claim during the initial postconviction proceeding"; he or she shows "prejudice" by "demonstrating that the claim not raised during the initial proceeding so infected the trial that the resulting conviction or sentence violated due process." *People v. Dorsey*, 2021 IL 123010, ¶ 32, 183 N.E.3d 715. "[O]bjective factors that constitute cause include *** a showing that the factual or legal basis for a claim was not reasonably available to counsel." (Internal quotation marks omitted.) *People v. Haines*, 2021 IL App (4th) 190612, ¶ 43, 188 N.E.3d 825 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991)).

¶ 24   Leave to file a successive postconviction petition should be denied when a review of the record, petition, and supporting documents makes clear the claims in that petition fail as a matter of law or are insufficient to warrant additional proceedings. *Dorsey*, 2021 IL 123010, ¶ 33. A defendant has the burden of submitting sufficient documentation to allow the trial court to determine whether "cause and prejudice" under section 122-1(f) exist. (Internal quotation marks omitted.) *People v. Smith*, 2014 IL 115946, ¶ 30, 21 N.E.3d 1172. The court should grant the motion if the "defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL

121450, ¶ 24. Our review of the denial of leave to file a successive postconviction petition is *de novo*. *Dorsey*, 2021 IL 123010, ¶ 33.

¶ 25                                   C. Defendant's *De Facto* Life Sentence Claim

¶ 26                                        1. *OSAD's Prejudice Argument*

¶ 27        OSAD argues, because defendant's sentence was *not* a *de facto* life sentence by the eighth amendment standard set out in *Buffer*, his successive petition could not succeed, and he thus could not show the prejudice required to file a successive postconviction petition. We find this argument unpersuasive. *Buffer* does not apply directly to a claim based on the proportionate penalties clause. In *People v. Hilliard*, 2023 IL 128186, ¶ 29, our supreme court concluded defendants of any age may raise proportionate penalties clause challenges to sentences of any length. Thus, the rule in *Buffer* provides no more than guidance for addressing proportionate penalties clause claims. This is not to suggest the *Hilliard* court endorsed claims by young nonjuveniles under the proportionate penalties clause. It did the opposite, warning prior decisions in which it declined to foreclose proportionate penalties claims by young nonjuveniles must not be read as its encouraging such claims. See *id.* ¶¶ 24-28 (discussing *People v. House*, 2021 IL 125124, 185 N.E.3d 1234, *People v. Harris*, 2018 IL 121932, 120 N.E.3d 900, *People v. Thompson*, 2015 IL 118151, 43 N.E.3d 984, and related appellate court cases). Nevertheless, the court was clear it had not set a minimum sentence for a challenge to a sentence under the proportionate penalties clause and had not foreclosed claims by young nonjuveniles.

¶ 28        OSAD may be correct, if the supreme court chooses to allow proportionate penalty clause claims from young nonjuveniles, it will draw a line in the same place *Buffer* did. However, it is premature to predict what the requirements for such claims might be when the supreme court has not yet accepted them.

¶ 29                                    2. *Eighth-Amendment Claim*

¶ 30          To the extent defendant has attempted to make a claim under eighth amendment, based on his receiving a *de facto* life sentence, it would be frivolous to argue he showed prejudice. In *Wilson*, 2023 IL 127666, ¶ 42, our supreme court overruled *People v. Holman*, 2017 IL 120655, ¶ 4, 91 N.E.3d 849—the case on which the *Buffer* court relied for the unconstitutionality of discretionary life sentences for juveniles. The *Wilson* court, looking to the Supreme Court's holding in *Jones v. Mississippi*, 593 U.S. ___, at ___, 141 S. Ct. 1307, 1313 (2021), rejected the idea a discretionary sentence, even one that is a *de facto* life sentence, violates the eighth amendment. *Wilson*, 2023 IL 127666, ¶ 42. *Jones* held, "In a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Jones*, ___ U.S. at ___, 141 S. Ct. at 1313. As no eighth amendment claim can be made for a discretionary sentence such as defendant's, such a claim must fail as a matter of law.

¶ 31          D. It Would Be Frivolous to Argue Defendant Showed "Cause"

¶ 32          Although we are not fully persuaded by OSAD's argument concerning "prejudice," we agree it would be frivolous to argue defendant made an adequate showing of "cause." Defendant suggested two related bases for finding cause in his motion. First, he, or at least the Kentucky order he cited, suggested *Roper* placed the Supreme Court's imprimatur on the use of scientific studies when addressing claims such as his. Second, he suggested he could not have made his claim without scientific studies conducted since the Supreme Court decided *Miller*. Neither basis can plausibly be argued to have given the trial court grounds to have ruled defendant made a *prima facie* showing of "cause."

¶ 33        First, the idea lower courts needed the guidance of *Roper* and *Miller* to consider scientific studies is inconsistent with the development of constitutional law. The Supreme Court has relied on scientific studies at least since 1954, when it relied on studies to conclude *de jure* segregation of schools is inherently harmful to black children. *Brown v. Board of Education of Topeka*, 347 U.S. 483, 494-95 n. 11 (1954) (citing studies tending to show segregation harmed black schoolchildren). The *Dorsey* court held, because "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing," the change *Miller* created in the approach to the sentencing of minors "at best deprived [the] defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' " *Dorsey*, 2021 IL 123010, ¶ 74 (quoting *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59, 127 N.E.3d 131). The same can be said of the support *Roper*'s use of scientific studies would provide to defendant's claim. Nothing in the way courts treat scientific studies would have prevented defendant from supporting a claim in his original petition with all relevant scientific studies available in 2003.

¶ 34        Second, it cannot plausibly be argued defendant made the necessary *prima facie* case for the existence of "cause" (*Bailey*, 2017 IL 121450, ¶ 24) by providing evidence the understanding of the developmental differences between young adults and older adults has advanced since *Miller*. Defendant provided two exhibits that summarized scientific research tending to show brain maturation and mental development continue after individuals cease to be considered juveniles. Bigler's "declaration" stated the consensus brain development ceases in the late teens came under challenge in the late 1990s and 2000s. According to Bigler's "declaration," research since then—and, indeed, since the Supreme Court decided *Miller*—made it increasingly accepted adults into their mid-twenties retain "legally[ ]relevant" adolescent developmental

characteristics. Thus, reading defendant's motion liberally, he has alleged sentencing claims based on the incomplete maturity of young nonjuveniles have significantly more scientific support than they did two decades ago. But science has developed gradually. Neither document suggested any single watershed change, and Bigler's declaration made clear a reevaluation of the maturity of young nonjuveniles was already underway by the early 2000s.

¶ 35        Based on Bigler's summary, we conclude, although defendant's documents show the scientific support for treating young nonjuveniles differently has increased since he filed his original petition, he cannot plausibly argue he made a *prima facie* case he could not have constructed the same claim in 2003, when he filed his original petition. As we explained in *Haines* (discussing a claim based on gradual changes in the law rather than science), "cause" does not exist if, "in the exercise of reasonable diligence, a claim can be built out of existing legal materials." *Haines*, 2021 IL App (4th) 190612, ¶ 45. Conversely, "cause" exists if the defendant did not have " 'the essential legal tools with which to construct his claim in time to present the claim' in the initial postconviction proceeding." *Id.* at ¶ 44 (quoting *Waldrop v. Jones*, 77 F.3d 1308, 1315 (11th Cir. 1996)). This formulation works equally well to address a claim based on evolving science. Defendant needed to make a *prima facie* showing he could not have constructed his claim in 2003. But, by his own evidence, the view of young nonjuveniles was already shifting by the early 2000s. Without more evidence of what the state of the science was in 2003, he cannot argue he made a *prima facie* case he could not have constructed his claim at that time. Thus, it would be frivolous to argue the trial court should have found defendant made an adequate showing of "cause" under section 122-1(f) of the Act.

¶ 36                                    III. CONCLUSION

¶ 37        We grant OSAD's motion for leave to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 38        Affirmed.