2024 IL App (2d) 210488-B
No. 2-21-0488
Opinion filed July 8, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-654 |
| JOSE M. GARCIA, | ) ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Jose M. Garcia, appeals from the summary dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) for relief from his first degree murder conviction (720 ILCS 5/9-1(a)(1) (West 2012)) in connection with the shooting death of Gabriel Gonzalez. Defendant's petition claimed that the trial court imposed a *de facto* life sentence that was unconstitutional based on his youth and developmental status at the time of the offense. We previously issued an opinion reversing the summary dismissal and remanding the cause with directions for the trial court to docket the petition for further proceedings. *People v. Garcia*, 2022 IL App (2d) 210488, ¶ 23 (*Garcia I*). We relied heavily on (1) *People v. Holman*, 2017 IL 120655, ¶ 40, which announced procedural requirements applicable under the eighth

amendment to the United States Constitution (U.S. Const., amend. VIII) when sentencing a juvenile to a natural or *de facto* life sentence, and (2) case law suggesting analogous constraints, under the proportionate penalties clause of our state constitution (Ill. Const. 1970, art. I, § 11), on the imposition of life sentences on young adults possessing certain developmental and character traits associated with juveniles. *Garcia I*, 2022 IL App (2d) 210488, ¶¶ 13-15. In doing so, we were careful to note that the United States Supreme Court's decision in *Jones v. Mississippi*, 593 U.S. 98 (2021), undermined *Holman*'s reasoning. *Garcia I*, 2022 IL App (2d) 210488, ¶ 20. We concluded, however, that *Holman* remained controlling precedent. *Id.* Our supreme court subsequently recognized that, in light of *Jones*, *Holman* no longer accurately reflected eighth amendment law. *People v. Wilson*, 2023 IL 127666, ¶ 41. Thereafter, the State petitioned in this case for leave to appeal to our supreme court. The supreme court denied the State's petition but ordered us to vacate the judgment in our original opinion and reconsider the matter in light of *Wilson*. *People v. Garcia*, No. 128815 (Ill. Jan. 24, 2024). We ordered the parties to submit supplemental briefs addressing "the effect of [*Wilson*], on the issue of whether defendant's sentence violates the proportionate penalties clause of the Illinois Constitution."[1] *People v. Garcia*, No. 2-21-0488 (Feb. 29, 2024) (unpublished minute order). Having reconsidered our decision in light of *Wilson*, we vacate the summary dismissal of defendant's petition and remand for further proceedings.

---

[1]We note that the State's supplemental brief raises arguments almost entirely unrelated to *Wilson*. We decline to consider these arguments. We will, however, consider the State's assertion that "[t]he proper framework for a young adult proportionate penalties challenge remains unchanged in light of *Wilson*."

¶ 2                                    I. BACKGROUND

¶ 3     Defendant's conviction followed a February 2014 jury trial where the evidence established that defendant fatally shot the victim outside a liquor store on March 10, 2013. The shooting was evidently connected to a gang-related dispute. Defendant, born on December 21, 1994, was 18 years old at the time of the offense. The trial court sentenced defendant in April 2014 to an aggregate 62-year prison term: 37 years for the murder (730 ILCS 5/5-4.5-20(a)(1) (West 2012)) plus a mandatory 25-year add-on sentence because defendant personally fired the shot that caused Gonzalez's death (*id.* § 5-8-1(a)(1)(d)(iii)). The sentence for murder was 17 years longer than the statutory minimum 20-year sentence. *Id.* § 5-4.5-20(a)(1).

¶ 4     According to the presentence investigation report (PSI), defendant had an extensive juvenile delinquency history, including adjudications for defacing school property, aggravated assault, criminal trespass to residence, consumption of alcohol by a minor, and resisting/obstructing an officer. Defendant (1) had spent time in juvenile correctional facilities, (2) had learning disabilities and received special education services, and (3) had a history of misbehavior in school. Although he did not finish high school, he earned a graduate equivalency degree (GED) while incarcerated. He became a gang member at 17 after being released from juvenile detention, although he may have had some form of prior gang affiliation. Defendant reported mental health issues, including depression and anger management problems. Defendant lived with both of his parents. His parents argued, but there was no physical abuse between them. However, defendant got into physical altercations with his father on several occasions. The PSI reflected that, in 2008, defendant received a "Psycho-Educational/Emotional [E]valuation," which revealed that he had a borderline intelligence quotient, suffered mild symptoms of depression, was

prone to angry outbursts, had an impulsive nature, was fearful of social rejection, and was easily provoked.

¶ 5    After hearing other evidence in aggravation and mitigation, which we need not recount here, the trial court imposed the aggregate 62-year prison sentence. The court stated that it had considered the PSI and all evidence in aggravation and mitigation. The court noted defendant's history of delinquency and gang involvement. The court acknowledged that another individual started the argument that led to the shooting but stressed that defendant took the conflict to a new level by bringing a gun and shooting the victim. The court also observed that defendant fired multiple shots, only one of which struck the victim; the missed shots endangered others nearby. The court mentioned defendant's problems in school but remarked that, by earning a GED in jail, defendant had shown that he could "make a choice that is productive and healthy." The court emphasized that the crime was gang-related and stressed the need to impose a sentence that would deter others from committing similar crimes. The court concluded by noting that defendant's actions showed that he did not value human life. Defendant moved for reconsideration of his sentence. In denying the motion, the court specifically noted that, in imposing his sentence, it had considered defendant's young age and potential for rehabilitation.

¶ 6    In April 2021, defendant, through counsel, filed his petition under the Act, claiming that his sentence was a *de facto* life sentence that violated the eighth amendment as interpreted by the Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. As discussed below, *Miller* placed limitations on the imposition of life sentences without parole for offenses committed by those under 18. *Id.* at 479. Although defendant was 18 years old when he killed the victim here, he cited *People v. Ruiz*, 2020 IL App (1st) 163145, and *People v. Johnson*, 2020 IL App (1st)

171362, for the proposition that a young adult may pursue an eighth amendment challenge under *Miller* to a life sentence without parole.

¶ 7    Along with his petition, defendant submitted a 38-page report from James Garbarino, Ph.D., a developmental psychologist. In his report, Garbarino stressed that he was not offering a clinical diagnosis of defendant. Rather he was providing "an analysis of his development[al] pathway from infancy to adolescence." Garbarino explained that the immaturity of the adolescent brain extends into early adulthood and includes the frontal lobes, which "play a crucial role in making good decisions, controlling impulses, focusing attention for planning, and managing emotions." According to Garbarino, the maturation process involves the brain's white matter, gray matter, and neurotransmitters, all of which "are compromised in an individual under the age of 25." In addition, social conditions affect the development of white matter, so certain youths "suffer both from the general limitations of unformed brains *and* the disadvantaged functioning that arises from their adverse childhood experiences." (Emphasis in original.) Garbarino added that "the hormonal conditions of such youths contribute to impaired brain function (relative to adults) in matters of assessing and taking risks, emotional intensity, and dealing with peers (including social rejection)." Based not on a clinical assessment but only on a review of documents concerning defendant's social history, Garbarino concluded:

   "[Defendant] appears to be the embodiment of the developmental issues that constitute the focal points of the Supreme Court's decision in *Miller v. Alabama* \*\*\*. As an 18[-]year[-]old youth, he demonstrated immaturity of thought and emotional control, impetuous and impulsive action, and failure to appreciate the full consequences of his criminal behavior. He came out of a family and home environment that was toxic and developmentally damaging because of abuse and abandonment. He lived in community

settings that exacerbated rather than compensated for the traumatic features of his home life. And, perhaps most importantly, the possibility of rehabilitation was present at the time of his crime and sentencing."

The trial court summarily dismissed the petition, and this appeal followed.

¶ 8                                          II. ANALYSIS

¶ 9      We begin by summarizing the relevant principles governing proceedings under the Act. Our supreme court has stated as follows:

> "The Act [citation] provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial. Under the Act, a postconviction proceeding contains three stages. At the first stage, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' [Citation.] If the court makes this determination, the court must dismiss the petition in a written order. [Citation.] If the petition is not dismissed, the proceedings move to the second stage. [Citation.]
>
> At the second stage, counsel is appointed to represent the defendant, if he is indigent [citation], and the State is permitted to file responsive pleadings [citation]. The circuit court must determine at this stage whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. [Citation.] If no such showing is made, the petition is dismissed. If, however, the petition sets forth a substantial showing of a constitutional violation, it is advanced to the third stage, where the circuit court conducts an evidentiary hearing [citation]." *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

¶ 10     This appeal arises from the first-stage summary dismissal of defendant's petition. At the first stage of postconviction review, the petition's allegations must be liberally construed and taken

as true. *People v. Harris*, 224 Ill. 2d 115, 126 (2007). A petition is frivolous or patently without merit and will be summarily dismissed at the first stage if it has no arguable basis either in law or in fact (*People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009)), *i.e.*, it "is based on an indisputably meritless legal theory or a fanciful factual allegation" (*id.* at 16). "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17. We review *de novo* a first-stage dismissal. *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 13.

¶ 11     In *Miller*, 567 U.S. at 479, the Supreme Court held that a sentencing scheme that mandates a life sentence without parole for crimes committed by a juvenile (*i.e.*, one under 18) violates the eighth amendment. In *Holman*, our supreme court considered the applicability of *Miller* to discretionary life sentences imposed on juveniles. *Holman*, 2017 IL 120655. The *Holman* court held that the eighth amendment does not categorically forbid discretionary life sentences without parole for juveniles, but before imposing such a sentence, the court must "determine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46. In making the determination, the trial court must consider "the defendant's youth and its attendant characteristics" (*id.*) as identified in *Miller*.

> "Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with

police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* (citing *Miller*, 567 U.S. at 477-78).

¶ 12    In *People v. Buffer*, 2019 IL 122327, ¶ 27, the supreme court held that *Miller* applies to any life sentence for a juvenile, whether "mandatory or discretionary, natural or *de facto*." The *Buffer* court determined that a sentence of more than 40 years is a *de facto* life sentence. *Id.* ¶ 41. Notably, in explaining when a life sentence could be imposed on a juvenile offender, the *Buffer* court drew no distinction between mandatory and discretionary sentencing schemes:

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Id.* ¶ 27.

Thus, under *Buffer*, a juvenile could receive a life sentence mandated by statute if the trial court considered the requisite factors.

¶ 13    In *People v. Harris*, 2018 IL 121932, ¶¶ 60-61, our supreme court declined to extend *Miller*'s eighth amendment protections to all offenders under age 21, noting that the Supreme Court was clear that age 18 was the dividing line between juveniles and adults for purposes of eighth amendment protections. However, as the First District noted in *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 87, the proportionate penalties clause is an alternative vehicle for sentencing challenges based on *Miller*'s concerns about the immaturity of young offenders. The *Wilson* court observed:

> "In recent years, *** our supreme court has acknowledged that young adults—at least those who were 20 years of age or younger at the time of their crimes—may rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support

as-applied challenges to life sentences brought pursuant to the Illinois proportionate penalties clause [citation]." *Id.*

The *Wilson* court cited *People v. House*, 2021 IL 125124, ¶¶ 29, 32, *Harris*, 2018 IL 121932, ¶ 48, and *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44. *Wilson*, 2022 IL App (1st) 192048, ¶¶ 87-88.

¶ 14 The proportionate penalties clause states that a court must determine all penalties based on the "seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To succeed on a proportionate penalties claim, the defendant must show that his sentence "is so disproportionate to the offense as to violate the constitution." *People v. Howard*, 2021 IL App (2d) 190695, ¶ 40. Stated differently, "[t]he proportionate penalties clause is implicated when a defendant's sentence is cruel, degrading, or so wholly disproportionate to the offense so as to shock the moral conscience of the community." *People v. Benford*, 2021 IL App (1st) 181237, ¶ 12. In recognizing the potential viability of a proportionate penalties claim based on the concerns articulated in *Miller*, our supreme court has (as one appellate court noted) accepted

"the possibility that a young-adult offender might demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." (Internal quotation marks omitted.) *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 27.

¶ 15 In *People v. Cortez*, 2021 IL App (4th) 190158, ¶ 47, the court elaborated on the elements of a proportionate penalties claim based on *Miller* concerns:

"[T]o establish an as-applied constitutional challenge to his or her life sentence based on *Miller* principles, a young adult offender is required to allege and ultimately demonstrate that (1) at the time of the commission of the underlying offense, his or her own specific characteristics—those related to youth, level of maturity, and brain development—placed him or her in the same category as juvenile offenders described in *Miller* and (2) his or her sentencing was not *Miller* compliant, in that a life sentence was imposed without regard for the offender's youth and its attendant characteristics. Further, as discussed, a defendant must present a claim that has an arguable basis in law and fact to survive the first stage of postconviction proceedings."

¶ 16    With these principles in mind, we consider whether defendant's claim is frivolous or is patently without merit, *i.e.* whether it is based on "an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. As to legal theory, although the exact parameters of a *Miller*-based claim under the proportionate penalties clause may not be entirely settled, the legal basis for defendant's claim—that the proportionate penalties clause forbids mandatory life sentences (whether natural or *de facto*) without the possibility of parole for young adult offenders who from a developmental standpoint should be treated as juveniles—is certainly not "indisputably meritless." Moreover, the claim is factually sufficient to proceed to the second stage. Defendant submitted a lengthy report from a developmental psychologist who observed that defendant had many of the traits that, per *Miller*, the sentencer must be permitted to consider before imposing a term of life imprisonment without the possibility of parole for a crime committed by an offender under the age of 18. Notably, the offense in this case took place less than three months after defendant's eighteenth birthday.

¶ 17    Our decision in *People v. Mauricio*, 2021 IL App (2d) 190619, cited by the State, does not call for a different result. *Mauricio* was a direct appeal from the defendant's conviction for first degree murder and the resultant 55-year prison sentence. We rejected the defendant's argument that a young adult can challenge his sentence under the eighth amendment as construed in *Miller*. *Id.* ¶¶ 20-24. In also rejecting the defendant's age-based proportionate penalties challenge to his sentence, we cited the seriousness of the offense (the trial court had found exceptionally brutal and heinous behavior indicative of wanton cruelty) and other aggravating and mitigating factors. *Id.* ¶ 29. We rendered no opinion on whether the proportionate penalties clause might require the application of the *Miller* safeguards in cases involving young adults whose developmental characteristics are in the juvenile category. Nor did the occasion seem to call for such an opinion. While the expert testimony at the sentencing hearing in *Mauricio* "particularly focused on defendant's traumatic childhood experiences and how those experiences may have impacted defendant" (*id.* ¶ 7), the testimony did not appear to establish that, from a developmental standpoint, the defendant had the characteristics of a juvenile.[2]

---

[2]In *Howard*, the defendant's proportionate penalties clause claim was similarly flawed. The defendant's claim was essentially that the trial court did not adequately consider defendant's youth; hence, in our view, it was a nonconstitutional abuse-of-discretion claim not cognizable in a postconviction petition. *Howard*, 2021 IL App (2d) 190695, ¶ 40. In *Howard*, as in *Mauricio*, the defendant had not made a sufficient showing based on his individual circumstances that he was entitled to the *Miller* protections as a young adult. *Id.* ¶¶ 46-47. We do not read either *Mauricio* or *Howard* to categorically foreclose *Miller*-based proportionate penalties challenges in appropriate cases.

¶ 18    We turn now to the effect of *Wilson* on defendant's claim. Had defendant's sentence been discretionary, *Wilson* might well have been fatal to his claim. Under *Holman*, a *Miller*-compliant hearing required a determination that "the [juvenile] defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation" before imposition of a discretionary sentence on the defendant. *Holman*, 2017 IL 120655, ¶ 46. However, *Wilson* recognized that, in light of *Jones*, *Holman* is no longer good law. *Wilson*, 2023 IL 127666, ¶ 42 (citing *Jones*, 593 U.S. at 105). In *Jones*, the Supreme Court expressly rejected the argument that imposing a discretionary life sentence required the type of determination mandated in *Holman*. *Id.* ¶ 34 (citing *Jones*, 593 U.S. at 101, 105). Instead, imposing a discretionary life sentence requires only "[a] hearing where youth and its attendant characteristics are considered as sentencing factors *** to separate those juveniles who may be sentenced to life without parole from those who may not." (Internal quotation marks omitted.) *Jones*, 593 U.S. at 111. "[U]nless a sentencing court 'expressly refuses as a matter of law to consider the defendant's youth ***' [citation], a discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *Wilson*, 2023 IL 127666, ¶ 38 (quoting *Jones*, 593 U.S. at 115 n.7). Contrary to defendant's argument that the trial court failed to consider his young age and rehabilitative potential, the court—in ruling on defendant's motion to reconsider his sentence—confirmed that it had indeed considered those factors. Moreover, consideration of rehabilitative potential necessarily encompasses consideration of transient characteristics of young adulthood, such as immaturity and impetuousness.

¶ 19    However, the statutory scheme under which defendant was sentenced *mandated* that defendant receive a *de facto* life sentence. The minimum sentence for first degree murder was a 20-year prison term. See 730 ILCS 5/5-4.5-20(a)(1) (West 2012). With the mandatory 25-year

enhancement for personally discharging a firearm (see *id.* § 5-8-1(a)(1)(d)(iii)), the minimum sentence the trial court could have imposed was a 45-year prison term, which constitutes a *de facto* life sentence. In *People v. Campbell*, the First District observed:

> "Key to the result in *Wilson*, where the court affirmed the circuit court's denial of the petitioner's motion for leave [to file a successive postconviction petition], was its observation that there was 'no dispute that [he] was sentenced under a sentencing scheme that granted the sentencing court the discretion to consider [his] youth and attendant circumstances *and to impose less than a de facto life sentence*.' *** [Citation.] As the *Wilson* court makes clear, *this* is the discretion that *Miller* requires a sentencing court to have when sentencing a defendant who was a juvenile at the time the crime was committed. So long as the court had this discretion and 'it is clear from the record that [it] did not refuse, as a matter of law, to consider [the defendant's] youth,' the Eighth Amendment is complied with." (Emphases in original.) *People v. Campbell*, 2023 IL App (1st) 220373, ¶ 49 (quoting *Wilson*, 2023 IL 127666, ¶¶ 42, 44).

¶ 20    In *Campbell*, the trial court sentenced the defendant, a juvenile offender, to a 110-year prison term. *Id.* ¶ 29. The shortest sentence that the defendant could have received under the applicable statutes was just over 50 years. *Id.* ¶ 1. The State did not dispute that the statutes imposed a mandatory *de facto* life sentence in violation of *Miller*; rather, the State argued that the error was harmless. *Id.* ¶ 51. According to the *Campbell* court, "[t]he State's position is that a *Miller*-compliant sentencing scheme is not required where the sentence imposed is so far above the statutory minimum that one can surmise that the discretion to impose something less than a life sentence would have made no difference." *Id.* The *Campbell* court rejected the argument:

"At issue here, however, is more than just a misapprehension of the applicable minimum sentence. Yes, under *Miller* and *Buffer*, the minimum sentence is constitutionally required to be something less than 40 years. But our supreme court's recent decision in *Wilson* confirms that *Miller* guarantees not just a different sentencing range but also mandates that the sentencing court have the discretion to impose something less than a life sentence without the possibility of parole. [Citation.]

\*\*\*

Although the court here exercised a degree of discretion by choosing a sentence between 50 years in prison and statutory natural life, our supreme court's holding in *Buffer*—that any sentence greater than 40 years is the legal equivalent of a natural life sentence—reveals that exercise of discretion to be meaningless under *Miller*. Where the minimum sentence available is more than 40 years, there is simply no constitutionally significant choice to be made." *Id.* ¶¶ 53-55.

Similarly, here, the fact that the trial court imposed a sentence well above the minimum does not signify a constitutionally sufficient exercise of discretion.

¶ 21 We hasten to add that, should the proceedings on remand result in a judgment that defendant's 62-year prison term violated the proportionate penalties clause as applied, such a judgment would not necessarily preclude imposition of the same sentence *under current law*. *Miller* held that the eighth amendment bars sentencing schemes that subject an offender under the age of 18 to a mandatory life sentence *without the possibility of parole*. See *Miller*, 567 U.S. at 479. Assuming, *arguendo*, that defendant's particular characteristics entitle him to the same protections under the proportionate penalties clause, his sentence would have to be vacated because, under the law in effect at the time he was sentenced, there was no possibility that

defendant would be paroled. Current law, however, provides, in pertinent part, that "[a] person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 *** shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence ***." 730 ILCS 5/5-4.5-115(b) (West 2022). If defendant establishes that he is entitled to be resentenced, that new sentence, whatever its length, will comply with *Miller* because defendant will be eligible for parole in less than 40 years.

¶ 22                               III. CONCLUSION

¶ 23     For the foregoing reasons, we vacate the judgment of the circuit court of Lake County summarily dismissing defendant's postconviction petition. We remand with directions to docket the petition for further proceedings under the Act.

¶ 24     Vacated and remanded.

*People v. Garcia*, **2024 IL App (2d) 210488-B**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 13-CF-654; the Hon. Daniel B. Shanes, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas C. Brandstrader, of Highwood, for appellant. |
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |