2025 IL App (1st) 240511-U

No. 1-24-0511

Order filed September 16, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 4234 |
| | ) | |
| ANTOINE MASON, | ) | Honorable |
| | ) | William B. Raines and |
| Defendant-Appellant. | ) | Laura Ayala-Gonzalez, |
| | ) | Judges, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the dismissal of defendant's successive postconviction petition due to his failure to demonstrate the cause prong of the cause-and-prejudice test. Defendant could have raised his age-based proportionate penalties challenge to his sentences earlier, either on direct appeal or in his initial postconviction petition.

¶ 2     Defendant Antoine Mason appeals from the trial court's dismissal of his successive petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Defendant's successive postconviction petition argued that his aggregate 85-year sentence for first

degree murder and attempted first degree murder violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) because he was 19 years old at the time of the offenses and had a difficult childhood. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                        A. Trial, Sentencing, and Direct Appeal

¶ 5    Following a November 1998 bench trial, the trial court found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 1994)) premised on accountability and attempted first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)) premised on direct culpability. The trial evidence established that, during a gang-related confrontation in Chicago on July 31, 1994, defendant shot William Thurman nonfatally in the thigh. Defendant's accomplice shot and killed a six-year-old bystander, which was the basis for defendant's accountability for first degree murder

¶ 6    The court held defendant's sentencing hearing on February 10, 1999. Relevant here, in mitigation, defense counsel argued that defendant "got off to" a "terrible start" in life because his parents were "in and out of prison" throughout his childhood. Defense counsel also contended that defendant was only 25 years old at the time of sentencing and should have "some sort of life" upon his release from prison. The trial court sentenced defendant to consecutive terms of 60 years for first degree murder and 25 years for attempted first degree murder. The court took "into consideration the personal history of this defendant; certainly his age, his age now as well as at the time of this offense" along with his "social history." The court noted that, during the presentence investigation, defendant described his childhood as "all right" and stated that "[h]e did not experience physical or sexual, mental abuse in any way."

¶ 7 On direct appeal, defendant argued that trial counsel rendered ineffective assistance and that his mandatory consecutive sentences were unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This court initially affirmed defendant's convictions but vacated his consecutive sentences pursuant to *Apprendi* and ordered that his sentences run concurrently. *People v. Mason*, 318 Ill. App. 3d 314, 320 (2000). The supreme court issued a supervisory order requiring this court to reconsider in light of *People v. Wagener*, 196 Ill. 2d 269 (2001). *People v. Mason*, 195 Ill. 2d 589 (2001). Upon reconsideration, this court affirmed defendant's convictions but held that his consecutive sentences were not unconstitutional under *Apprendi* and affirmed them. *People v. Mason*, 324 Ill. App. 3d 762, 768 (2001).

¶ 8 B. Initial Postconviction Petition

¶ 9 In 2001, defendant filed a *pro se* postconviction petition challenging the evidentiary and legal bases of the State's accountability theory at trial. The petition also reiterated defendant's argument that his consecutive sentences were abuses of the trial court's discretion and unconstitutional under *Apprendi*.

¶ 10 The State moved to dismiss defendant's postconviction petition, arguing that it was not the proper means to challenge the legal or evidentiary sufficiency of the State's accountability theory; rather, defendant should have raised those issues on direct appeal.

¶ 11 In 2002, defendant, represented by counsel, filed an amended postconviction petition, which argued that (1) trial counsel rendered ineffective assistance by failing to cite legal authority in his motion for a new trial, (2) appellate counsel rendered ineffective assistance by failing to challenge an evidentiary ruling at trial, the sufficiency of the evidence, and trial counsel's ineffectiveness, and (3) the trial court violated defendant' sixth amendment (U.S. Const., amend.

VI) rights when it admitted the transcript of a grand jury witness's testimony as substantive evidence.

¶ 12    The State moved to dismiss defendant's amended petition, arguing that (1) trial counsel's failure to cite legal authority in his motion for a new trial was immaterial as the trial court presumptively knew the law, (2) defendant framing certain issues as claims of ineffective assistance of appellate counsel was merely an attempt to avoid forfeiture of issues he could have raised on direct appeal, and (3) defendant's claims of ineffective assistance of appellate counsel failed on the merits.

¶ 13    In 2006, the trial court granted the State's motion to dismiss.

¶ 14    Defendant appealed the dismissal of his postconviction claim that his sentences were unconstitutional under *Apprendi*. *People v. Mason*, No. 1-06-2205 (2009) (unpublished summary order under Illinois Supreme court Rule 23(c)). This court affirmed. *Id.*

¶ 15                    C. Successive Postconviction Petition

¶ 16    On August 4, 2020, defendant filed a *pro se* motion for leave to file a successive postconviction petition based on a line of federal and state cases governing life sentences imposed on juvenile defendants, beginning with *Miller v. Alabama*, 567 U.S. 460 (2012).

¶ 17    Defendant argued that his aggregate 85-year sentence violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11) pursuant to *Miller* and related Illinois authority. Defendant contended that he was 19 years old when he committed the offenses and the trial court imposed a *de facto* life sentence of 85 years. Defendant acknowledged that the trial court considered his age at sentencing. However, he argued that the court did *not* consider the

characteristics of youth highlighted in *Miller* or how those characteristics affected his conduct in this case. In addition, defendant pointed to recent scientific research indicating that the brains of young adults continue to develop through their mid-20s, particularly the parts of the brain "that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable." Defendant attached as exhibits several legal journal and news articles from 2015, 2016, and 2019 discussing such research in the context of juvenile sentencing.

¶ 18    Defendant sought leave to file his successive postconviction petition under the cause-and-prejudice test, which requires a successive postconviction petitioner to show (1) a reason he could not have raised his claim earlier and (2) a violation of his right to due process. See 725 ILCS 5/122-1(f) (West 2020). As to cause, defendant argued that *Miller* and related Illinois case law did not exist at the time of his initial postconviction petition or sentencing. As to prejudice, defendant contended that he was harmed by serving an unconstitutional 85-year sentence.

¶ 19    The trial court advanced defendant's successive postconviction petition to the second stage under the misapprehension that it was his initial postconviction petition. Specifically, on November 6, 2020, the court stated that "[b]ecause of the delay in filing," the court would "advance this to the second stage."

¶ 20    At a hearing on March 12, 2021, the court stated that "[t]he second stage is because of the pandemic and we lost that 90 day window for—This is a successive petition." An assistant state's attorney advised the court that "on a successive petition there is no 90 day window." The court agreed and explained that it "didn't know [the petition] was successive until [the court] just looked at it. So there is no 90 day window." This discussion referred to the Act's provision that a trial

court has 90 days to determine whether an *initial* postconviction petition is frivolous or patently without merit, and if the court fails to do so, the petition automatically advances to the second stage. See 725 ILCS 5/122-2.1 (West 2020); *People v. McDonald*, 373 Ill. App. 3d 876, 881 (2007).

¶ 21    The Office of the Public Defender then appeared on defendant's behalf. Defense counsel did not amend defendant's *pro se* petition; rather, counsel filed a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017) attesting that he consulted with defendant, reviewed the record, and supplemented the *pro se* petition with defendant's affidavit.

¶ 22    In a 26-page handwritten affidavit, defendant described his traumatic childhood. Defendant attested that, when he was a child, older relatives frequently beat him, sometimes causing injuries that required stitches. A family friend and one of defendant's cousins sexually abused him. Defendant's mother used crack cocaine and disappeared for days at a time. On several occasions, police raided defendant's house and arrested his parents while he was present.

¶ 23    Defendant also attested that he began using drugs and became involved in gang violence when he was in elementary school. He spent two months in juvenile detention in connection with a gang-related shooting that he witnessed. Thereafter, police harassed and beat him because they believed he was a gang member. Defendant joined the Vice Lords street gang and was involved in frequent gang violence. Defendant was expelled from two elementary schools and many of his teachers physically abused him. He was in juvenile detention from November 1988 to July 1992 after police arrested him with a firearm following a gang-related altercation on a school bus. After his release, he began selling cannabis and crack cocaine, although he was unsuccessful as a drug dealer. Defendant was arrested for drug offenses and spent time in jail but received probation. He

was also arrested for vehicle theft. Defendant was 19 years old when he was arrested in this murder and attempted murder case. He described himself as "young and dumb" and "cowered down by peer pressure" at the time of these offenses. However, defendant attested that the "days of [his] immaturity" were "[l]ong gone." He practiced conflict resolution and hoped to spend the rest of his life with his mother and grandchildren.

¶ 24 The State moved to dismiss defendant's successive postconviction petition, arguing that defendant could not raise an eighth amendment challenge to his sentence under *Miller* because *Miller* applied only to juveniles under 18 years of age. The State also argued that defendant did not receive a *de facto* life sentence because day-for-day good time credit would result in him serving 42 ½ years in prison, not 85. Finally, the State argued that defendant could not meet the cause-and-prejudice test because in *People v. Clark*, 2023 IL 127273, our supreme court held that the unavailability of *Miller* and related authority at the time of sentencing does not establish cause for raising a proportionate penalties challenge to a sentence in a successive postconviction petition.

¶ 25 Defendant did not file a response to the State's motion to dismiss.

¶ 26 The trial court held oral argument on the State's motion to dismiss on February 28, 2024. The State reiterated the arguments it made in its motion and contended that the trial court should not have granted defendant leave to file his successive postconviction petition.

¶ 27 Defendant conceded that *Miller* did not apply to him and explained that he was only challenging his sentence under the proportionate penalties clause, not the eighth amendment. Defendant contended that Illinois case law allowed a defendant who, like him, was 19 years old at the time of the offense to challenge his *de facto* life sentence under the proportionate penalties clause. Defendant also argued that his sentence was a *de facto* life sentence because even if he

served only half of it, he would still serve 42 ½ years, and any sentence over 40 years is a *de facto* life sentence. Finally, defendant argued that he demonstrated cause and prejudice for filing a successive postconviction petition because the Illinois case law on which he relied did not exist until years after his initial postconviction petition was dismissed.

¶ 28    The trial court granted the State's motion to dismiss. The court found that defendant did not satisfy the cause-and-prejudice test, so "[l]eave should have never been granted" for defendant to file his successive postconviction petition.

¶ 29    Defendant timely appealed.

¶ 30                                   II. ANALYSIS

¶ 31    Defendant contends that his sentences totaling 85 years for offenses committed when he was 19 years old violate the proportionate penalties clause of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 32                         A. The Post-Conviction Hearing Act

¶ 33    The Act allows a defendant to raise a claim that his conviction or sentence resulted from a substantial denial of his constitutional rights. *Clark*, 2023 IL 127273, ¶ 38. Generally, a defendant may file only one postconviction petition. *Id.* ¶ 39. To obtain leave to file a successive postconviction petition, a defendant must fulfill the cause-and-prejudice test set out in section 122-1(f) of the Act, which provides

> "Leave of court [for filing a successive postconviction petition] may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of

this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

The trial court conducts the cause-and-prejudice analysis based on the pleadings and determines whether the defendant has alleged facts setting out a *prima facie* case of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 47. A defendant must establish both elements of the test to obtain leave to file a successive postconviction petition. *Id.*

¶ 34    If a trial court grants leave to file a successive postconviction petition, the petition advances to second-stage proceedings. *People v. Robinson*, 2020 IL 123849, ¶ 43. At the second stage, the defendant may request counsel and the State may file responsive pleadings. 725 ILCS 5/122-4, 122-5 (West 2020). The trial court must determine whether the petition makes a substantial showing of a constitutional violation. *People v. Sanders*, 2016 IL 118123, ¶ 37. If the petition does not make such a showing, the trial court must dismiss it. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the petition makes such a showing, it advances to the third stage for an evidentiary hearing. *Id.* ¶¶ 28-29.

¶ 35    We will begin by conducting the cause-and-prejudice test because it is the first step in successive postconviction proceedings. 725 ILCS 5/122-1(f) (West 2020). The trial court mistakenly advanced defendant's successive postconviction petition to the second stage without conducting the cause-and-prejudice test, which was error. See *People v. Thames*, 2021 IL App (1st) 180071, ¶ 85. However, that error does not hinder our review. We may review cause and

prejudice on an appeal from a second-stage dismissal because the State can seek dismissal based on the defendant's failure to establish cause and prejudice at any stage in postconviction proceedings. *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 37 ("even though the trial court advanced the petition to the second stage and made no cause and prejudice findings, we will review whether defendant established cause and prejudice"). Moreover, our review is *de novo* regardless of whether the trial court denied defendant leave to file the successive petition due to his failure to show cause and prejudice (see *People v. Bailey*, 2017 IL 121450, ¶ 13) or dismissed the petition at the second stage due to defendant's failure to make a substantial showing of a constitutional violation (see *Sanders*, 2016 IL 118123, ¶ 31). *De novo* review means that we perform the same analysis that a trial court would perform. *People v. Van Dyke*, 2020 IL App (1st) 191384, ¶ 41.

¶ 36                                                    B. Cause

¶ 37    To establish cause, a defendant must identify an objective factor that prevented him from raising his constitutional claim in his initial postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 48; 725 ILCS 5/122-1(f) (West 2020). That is, the defendant must articulate why he could not have discovered the claim earlier by exercising due diligence. *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 73.

¶ 38    The "cause" that defendant asserts is a combination of factual allegations, case law, and scientific research. Defendant contends that his affidavit describing his difficult childhood is "new" information that "was not presented at his sentencing hearing." Defendant argues that this "new" information shows his youthful characteristics at the time of the offenses and, when considered in light of new case law and scientific research, means that his sentence violates the proportionate penalties clause.

¶ 39                                  1. Defendant's Affidavit

¶ 40     First, we reject defendant's contention that his affidavit describing his childhood is "newly discovered" information that constitutes cause for filing a successive postconviction petition. Defendant's memory of his own childhood has always been available to him. There is no reason defendant could not have raised his childhood as a mitigating factor in sentencing decades ago. To some degree, he did. At the 1999 sentencing hearing, defendant's attorney cited his difficult childhood, his parents' serial incarcerations, and his young age as mitigating factors. The fact that defendant's affidavit raises these same issues in more detail does not establish cause. See *Clark*, 2023 IL 127273, ¶ 63 (information that was available to the defendant and the court at the time of sentencing is not cause to raise a proportionate penalties challenge in a successive postconviction petition); *People v. Mobley*, 2022 IL App (1st) 201255-U, ¶¶ 23, 37, 39 (the defendant's own affidavit describing his upbringing did not fulfill the cause-and-prejudice test). "[D]efendant merely seeks a second chance at requesting the court to give additional weight to his" difficult childhood as a mitigating factor. See *Clark*, 2023 IL 127273, ¶ 63. To the extent defendant argues that, at the sentencing hearing, his attorney did not effectively present his difficult childhood, or the trial court misunderstood the nature of his upbringing, he could have raised those issues on direct appeal. Therefore, defendant's affidavit does not establish cause.

¶ 41                              2. *Miller* and Related Case Law

¶ 42     Defendant also cannot establish cause based on the development of case law. A defendant who was 19 years old at the time of the offense can raise a proportionate penalties challenge to a life sentence based on the evolving science on juvenile maturity and brain development. *Id.* ¶ 87. However, defendant has always been able to raise an age-based proportionate penalties claim. The

proportionate penalties clause has existed since 1970 and "Illinois cases have long held the proportionate penalties clause required the circuit court to take into account the defendant's youth and mentality in fashioning an appropriate sentence." (Internal quotation marks omitted.) *Id.* ¶ 92 (collecting cases dating back to 1972). Even prior to *Miller* and the Illinois authority it produced, defendant has always "had the tools to construct a claim that his sentence violated the proportionate penalties clause because the sentencing judge did not take into account (1) his youth and (2) how his particular neurobiological development affected his maturity and decision-making." See *People v. Leach*, 2024 IL App (4th) 230298, ¶ 83. Defendant could have raised his proportionate penalties claim on direct appeal or in his initial postconviction petition.

¶ 43    Because age-based proportionate penalties challenges to sentences have been available in Illinois for decades, our supreme court has held that *Miller* and the case law it produced do not constitute cause for a defendant to raise a proportionate penalties claim in a successive postconviction petition. *Clark*, 2023 IL 127273, ¶ 67; see also *People v. Spencer*, 2025 IL 130015, ¶ 31; *People v. Moore*, 2023 IL 126461, ¶ 40; *People v. Dorsey*, 2021 IL 123010, ¶ 74. Similarly, "this court has universally *** conclude[d] that cause has not been established based on the prior unavailability of *Miller* and its progeny." *People v. French*, 2022 IL App (1st) 220122, ¶ 27; see also *People v. Willis*, 2025 IL App (1st) 232204, ¶ 28 (the defendant forfeited any proportionate penalties challenge to his sentence because he could have raised that challenge in a prior proceeding, even before *Miller*). Therefore, defendant has failed to establish cause based on the development of case law.

¶ 44    The cases that defendant cites to argue that *Miller*'s unavailability at the time of sentencing establishes cause are no longer good law. See, *e.g.*, *People v. Ruiz*, 2020 IL App (1st) 163145

(abrogation recognized by *People v. Hilliard*, 2023 IL 128186, ¶ 28); *People v. Minniefield*, 2020 IL App (1st) 170541 (same).

¶ 45    Defendant also cites *People v. Buffer*, 2019 IL 122327, which holds that "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *Id.* ¶ 41. *Buffer* does not apply to defendant because he was not a juvenile at the time of the offenses. Moreover, *Buffer* does not apply to proportionate penalties clause claims. *People v. Haynes*, 2024 IL App (4th) 230222-U, ¶ 27. Therefore, the development of case law following *Miller* does not establish cause.

¶ 46                                    3. New Scientific Research

¶ 47    The only arguably new information that defendant's successive petition presents is scientific research on young adult brain development, which did not exist at the time of sentencing or his initial postconviction petition. Defendant contends that this research supports a conclusion that his mental functioning was more like that of a juvenile at the time of the offenses. However, this court has repeatedly rejected that argument. See, *e.g.*, *People v. White*, 2020 IL App (5th) 170345, ¶ 24 ("a flat allegation as to evolving science on juvenile maturity and brain development is simply insufficient" to "overcome the high bar for leave to file a successive postconviction petition"); *People v. Robinson*, 2025 IL App (1st) 231419-U, ¶ 63 (new neuroscientific research does not constitute cause because Illinois courts have long recognized that fully developed adults are different from still-developing young adults).

¶ 48    Defendant's argument on this point is speculative. General studies about young adult brain development do not establish that *this* defendant functioned at the level of a juvenile in 1994, especially where there is no indication defendant suffers from cognitive or developmental

impairment. See *White*, 2020 IL App (5th) 170345, ¶ 24. The "allegations relating to [defendant's] family history do not rise to the level of special circumstances that would provide a compelling reason to advance his successive postconviction petition." See *id.* Moreover, no expert has opined that defendant's traumatic childhood engendered in him the juvenile traits that are relevant to sentencing under *Miller*. *Cf. People v. Garcia*, 2024 IL App (2d) 210488-B, ¶ 16 (the postconviction petitioner "submitted a lengthy report from a developmental psychologist who observed that defendant had many of the traits that, per *Miller*, the sentenc[ing]" court must consider).

¶ 49    Finally, defendant's attestations about his maturation in prison do not change our conclusion. The fact that defendant is more mature now at 50 years old than he was at 19 is unsurprising, and it does not mean that he could not have raised his proportionate penalties claim earlier. Defendant was always 19 years old at the time of the offenses, always had access to his own memories about his childhood (memories that were likely fresher when he was 19 than now), and was always legally able to challenge his sentence under the proportionate penalties clause. Accordingly, we find that defendant failed to establish the cause prong of the cause-and-prejudice test and should not have been granted leave to file his successive postconviction petition.

¶ 50    Because we find that defendant failed to establish cause, we need not address prejudice. See *People v. Morrow*, 2019 IL App (1st) 161208, ¶ 57 ("we may uphold the denial of leave to file the claim if defendant has failed to establish either prong" of the cause-and-prejudice test). Defendant has forfeited any arguments regarding prejudice anyway, as his briefs do not address that prong. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). We can affirm the second-stage dismissal of defendant's successive postconviction petition "on any grounds substantiated by the record,

regardless of the trial court's reasoning" (*People v. Snow*, 2012 IL App (4th) 110415, ¶ 17), and we do so here.

¶ 51 We affirm the dismissal of defendant's successive postconviction petition due to his failure to establish cause.

¶ 52                                    III. CONCLUSION

¶ 53 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 54 Affirmed.